FILED

December 22, 2015

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 8:19 AM



# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT KNOXVILLE

| | |
|---|---|
| MICHAEL PICKENS,<br>　　　　Employee, | ) Docket No.: 2015-03-0100<br>)<br>) |
| v. | ) State File Number: 95792-2014<br>) |
| UNITED PARCEL SERVICE,<br>　　　　Employer,<br>And | )<br>) Judge Lisa A. Knott<br>)<br>) |
| LIBERTY MUTUAL INSURANCE<br>COMPANY,<br>　　　　Insurance Carrier. | )<br>)<br>) |

---

## EXPEDITED HEARING ORDER GRANTING BENEFITS

---

This matter came before the undersigned workers' compensation judge on the Request for Expedited Hearing filed by the employee, Mr. Pickens, pursuant to Tennessee Code Annotated section 50-6-239 (2014). The present focus of this case is Mr. Pickens' back condition. The central legal issue is whether Mr. Pickens has established that he is likely to succeed at a hearing on the merits that his back condition arose primarily out of and in the course and scope of his employment. For the reasons set forth below, the Court finds that Mr. Pickens is entitled to medical and temporary disability benefits.[1]

### History of Claim

Mr. Pickens is a forty-year-old resident of Knox County, Tennessee. UPS employed Mr. Pickens as a package driver.

Mr. Pickens alleged that he sustained a back injury while working on December 2, 2014. Mr. Pickens alleged that his knee pain increased due to operating the clutch of the package car. After manipulating his position in the driver's seat to alleviate his knee

---

[1] A complete listing of the technical record and exhibits admitted at the Expedited Hearing is attached to this Order as an appendix.

1

injury, he began experiencing back pain. Mr. Pickens gave notice of his injury to his supervisor, Pam Booher, on December 3, 2014.

Also on December 3, 2014, Mr. Pickens sought treatment with Erin E. Jacques, FNP-BC, with his primary care physician, Dr. Jeffrey Boruff's office, for his complaints, who recommended that he be excused from work until December 10, 2014, for a low back injury. (Ex. 5.) Two days later, UPS directed Mr. Pickens to see Dr. Christopher Copeland, at Occupational Health Systems, for evaluation.[2] Mr. Pickens gave a history of left knee pain for approximately two years that increased four to five months ago, from driving a manual truck at work. He started sitting in a different position to alleviate his knee pain and began experiencing back pain. (Ex. 6.) Mr. Pickens testified that Dr. Copeland's nurse asked him questions for approximately forty-five minutes; Dr. Copeland was in the room for sixty to seventy-five seconds and did not perform a physical exam. Dr. Copeland opined that the injury was not work-related.

On December 8, 2014, Mr. Pickens attempted to return to work but could not complete his route due to the pain. Since UPS denied the claim, Mr. Pickens continued to treat with Dr. Boruff's office. On December 13, 2014, Mr. Pickens underwent an MRI, which revealed a herniated disc and an annular tear. (Ex. 5.) Upon follow up, NP Jacques restricted Mr. Pickens from working. (Ex. 5.)

On March 12, 2015, Mr. Pickens submitted a causation questionnaire to Dr. Boruff. Dr. Boruff opined, "to a reasonable degree of medical certainty, I believe Mr. Pickens [sic] injuries are related to his work at UPS." Dr. Boruff further opined, "the injury occurred on December 2, 2014, assessed in office on December 2, 2014, he has been unable to perform job duties since." (Ex. 5.)

Mr. Pickens filed a Petition for Benefit Determination seeking medical and temporary benefits on March 31, 2015. The parties did not resolve the disputed issues through mediation, and the Mediating Specialist filed a Dispute Certification Notice. Mr. Pickens filed a Request for Expedited Hearing, and this Court heard the matter on December 15, 2015. At the Expedited Hearing, Mr. Pickens asserted that, although he originally thought operating the manual transmission truck caused his back pain, both Dr. Boruff and Dr. Koenig opined his back condition was caused by lifting heavy packages at UPS. UPS countered that Dr. Copeland opined that Mr. Pickens' back condition is not work-related, and the opinions of Drs. Boruff and Koenig do not establish that Mr.

---

[2] Mr. Pickens testified that UPS did not provide him with a panel of physicians. Mr. Pickens also stated that his supervisor, Ms. Booher, came to the appointment with Dr. Copeland; had a lengthy conversation with the office manager; and when he left the exam room, she said, "I guess you are upset," which indicated to him that she was aware of the outcome of the exam before he exited the room. UPS' business manager, Russell Powers, testified and did not refute that UPS did not provide Mr. Pickens with a panel of physicians. However, the parties did not mark the Dispute Certification Notice box for "Whether Employer is obligated to provide a panel of physicians upon notice from Employee of an alleged injury." Therefore, the Court did not address this specific issue. *See* Tenn. Code Ann. § 50-6-239(b)(1) (2014).

2

Pickens' back condition arose primarily out of his employment.

## Findings of Fact and Conclusions of Law

The Workers' Compensation Law shall not be remedially or liberally construed in favor of either party but shall be construed fairly, impartially and in accordance with basic principles of statutory construction favoring neither the employee nor employer. Tenn. Code Ann. § 50-6-116 (2014). The employee in a workers' compensation claim has the burden of proof on all essential elements of a claim. *Tindall v. Waring Park Ass'n,* 725 S.W.2d 935, 937 (Tenn. 1987);[3] *Scott v. Integrity Staffing Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015).

An employee need not prove every element of his or her claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing,* No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). At an expedited hearing, an employee has the burden to come forward with sufficient evidence from which the trial court can determine that the employee is likely to prevail at a hearing on the merits. *Id.* This lesser evidentiary standard "does not relieve an employee of the burden of producing evidence of an injury by accident that arose primarily out of and in the course and scope of employment at an expedited hearing, but allows some relief to be granted if that evidence does not rise to the level of a 'preponderance of the evidence.'" *Buchanan v. Carlex Glass Co.,* No. 2015-01-0012, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *6 (Tenn. Workers' Comp. App. Bd. Sept. 29, 2015).

For injuries on or after July 1, 2014, an employee must show that he suffered an accidental injury caused by an incident, or specific set of incidents, arising primarily out of and in the course and scope of employment, and identifiable by time and place of occurrence. Tenn. Code Ann. § 50-6-102(13)(A) (2014). Cumulative trauma conditions are not covered unless the condition "arose primarily out of the employment." Tenn. Code Ann. 50-6-301(b) (2014). "Arising primarily out of and in the course and scope of employment" requires a showing, to a reasonable degree of medical certainty, that the injury causing disablement or the need for medical treatment contributed more than fifty percent considering all causes. Tenn. Code Ann. § 50-6-102(13)(C) (2014). "Shown to a reasonable degree of medical certainty" means that, in the opinion of the treating physician, it is more likely than not considering all causes. Tenn. Code Ann. § 50-6-102(13)(D)

---

[3] The Tennessee Workers' Compensation Appeals Board allows reliance on precedent from the Tennessee Supreme Court "unless it is evident that the Supreme Court's decision or rationale relied on a remedial interpretation of pre-July 1, 2014 statutes, that it relied on specific statutory language no longer contained in the Workers' Compensation Law, and/or that it relied on an analysis that has since been addressed by the general assembly through statutory amendments." *McCord v. Advantage Human Resourcing,* No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *13 n.4 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015).

(2014).

Mr. Pickens saw NP Jacques on December 3, 2014, and that note contained the following:

> Onset one day ago. Location of pain is lower back. There is no radiation of pain. The patient describes the pain as ache and dull. Symptoms are aggravated by pushing, standing, twisting and works at UPS handling packages which has probably called [sic] back sprain.
> . . .
> Patient Plan: Lumbar pain started yesterday, probably r/t lifting heavy packages at work.

(Ex. 5.)

On March 23, 2015, Dr. Boruff opined that Mr. Pickens' injuries are related to his employment at UPS.

Dr. Koenig performed an independent medical evaluation for Mr. Pickens on November 10, 2015, and issued a thorough and detailed eight-page report. The following opinions were contained in Dr. Koenig's report:

> Diagnoses attributed to the 2 December 2014 reported workmen's comp-related injury: Lumbosacral strain
> Small paracental L5-S1 HNP at L%-S1 with improved, currently nonverifiable left radiculopathy
> L5-S1 annular tear
>
> [T]his orthopedic surgeon concurs that with the implication made by Dr. Boruff that the repetitive clutching per se is not what caused his lumbar symptoms. Again repetitive clutching may indeed exacerbate the patient's preexisting osteoarthritis of the left knee, which however, is not evaluated in this IME, which is limited to the lumbar spine. The patient's potential altered posture secondary be stated within a reasonable degree of medical certainty. However, it appears that the implication noted within Dr. Boruff's notes as well as the implication verbalized to the patient by the nurse at Occupational Health Systems are correct in determining that the most likely source of the patient's lumbar spine pathology is the repetitive lifting as described by the patient as follows: "140 miles a day, 85-115 stops/packages per day, lifting up to 70 pounds, even on rare occasions 150 pounds."
>
> The patient's incorrect lay perception of the mechanism of injury (i.e. repetitive clutching and/or poor posture) should not obviate the multiple and

4

more professional assessments (i.e. those of an occupational nurse, primary care physician, and this orthopedic surgeon) that all similarly point to the occupational exposure of repetitive bending, lifting, and twisting as being the legitimate etiology of his symptoms, with a high degree of medical certainty.

It should be mentioned that the patient has only one mildly contributing associated factor in the form of a mildly increased BMI (at 6-foot 4-inch and 250 pounds). NO other associated factors (i.e. smoking, prior lumbar injury, etc.) are noted. The patient displays absolutely no signs of symptom magnification or malingering at the present time.

The Patient's care and treatment has been appropriate to date by his primary care physician, including NSAIDs (meloxicam), muscle relaxers (Flexeril), and physical therapy, coupled with judicious use of epidural steroid injections (presumably on the left at L5-S1). All of these have been directed to the WC-related injury reported on 2 Dec. 2014.

The above impairment rating is calculated based on the patient's history that he is unable to receive any additional care and thus has indeed reached maximum medical improvement at this juncture. The patient would potentially benefit in the future of occasional, judicious repeat of epidural steroid injections on the left at L5-S1. He does retain a 6% whole person impairment rating as a result of the above workmen's compensation-related injury.

This orthopedic surgeon would indicate that a functional capacity evaluation (FCE) has not yet been obtained that would objectively define the patient's exact work capacity. In lieu of such an FCE, it is this orthopedic surgeon's professional opinion however that such a test would likely approximate the following recommendations: No lifting greater than 30 pounds, no repetitive bending, stooping, or squatting, the allowance for frequent changes in positions, with no position (i.e. standing, walking, sitting) maintained for more than two hours without the ability to change.

(Ex. 7.)

The issue in this case is whether Mr. Pickens' back condition arose primarily out of and in the course and scope of his employment, or stated another way, that Mr. Pickens' employment contributed more than fifty percent in causing his back condition, considering all causes. Three physicians have provided causation opinions. UPS stated, in its Memorandum in opposition to Mr. Pickens' Request for Expedited Hearing, that "[i]t is undisputed that Dr. Copeland was the authorized treating physician selected by Dr. Pickens for treatment," and thus his opinion is presumed correct. (T.R. 4.) However, the Expedited

Hearing testimony established that UPS chose to direct Mr. Pickens to Dr. Copeland rather than providing a panel of physicians as required by Tennessee Code Annotated Section 50-6-204(3)(A)(i) (2014). Therefore, Dr. Copeland's opinion is not entitled to the statutory presumption. Based on Mr. Pickens' unrefuted testimony that Dr. Copeland did not perform a physical exam, did not obtain x-rays, and was only in the exam room for sixty to seventy-five seconds, the Court does not place much weight on his opinion that Mr. Pickens' back condition was not work-related.

Mr. Pickens testified that Dr. Boruff has been his primary care physician for approximately twenty years. On Mr. Pickens' first visit with Dr. Boruff's office, the NP related his back pain to "lifting heavy packages at work." (Ex. 5.) Dr. Boruff opined that Mr. Pickens' back condition is related to his employment at UPS. (Ex. 5.) Dr. Koenig, who is an orthopedic surgeon, performed a thorough and detailed record review and physical examination. Dr. Koenig opined "with a high degree of medical certainty" that Mr. Pickens' back condition resulted from his UPS employment activities. Dr. Koenig considered other potential causes of Mr. Pickens' back condition (such as smoking and prior back injuries) and found that none, other than one mildly contributing factor in the form of a mildly increased BMI, existed. (Ex. 7.) The Court finds that Mr. Pickens has established, through the opinions of Drs. Boruff and Koenig, that he is likely to proceed at a hearing on the merits that his back condition arose primarily from his UPS employment.

Tennessee law provides that an employer must pay temporary disability benefits until the employee reaches maximum medical improvement so long as the employee can prove an inability to work due to a compensable injury. *Simpson v. Satterfield*, 564 S.W.2d 953, 955 (Tenn. 1978). An employee is entitled to receive temporary partial disability benefits, pursuant to Tennessee Code Annotated section 50-6-207(2) (2014), when "the temporary disability is not total." *Stem v. Thompson Servs.*, No. M2010-01566-WC-R3-WC, 2011 Tenn. LEXIS 742, at *27 (Tenn. Workers' Comp. Panel July 26, 2011); *Jewell v. Cobble Construction and Arcus Restoration*, No. 2014-05-0003, 2015 TN Wrk. Comp. App. Bd. LEXIS 1, at *22 (Tenn. Workers' Comp. App. Bd. Jan. 12, 2015).

Dr. Boruff opined that, as a result of his back condition, Mr. Pickens was unable to work from December 2, 2014, to March 23, 2015.[4] (Ex. 5.) Mr. Pickens testified that Dr. Boruff has never released him to return to work. The last provided note from Dr. Boruff's office is April 20, 2015. While that note references that Mr. Pickens "is still currently out of work due to pain and inability to complete job responsibilities," there is no written off-work restriction to reflect he was unable to work as a result of the work injury. Dr. Koenig did not address Mr. Pickens' ability or inability to work prior to his exam on November 10, 2015. However, he did assign permanent restrictions of no lifting greater than thirty pounds, no repetitive bending, stooping, or squatting, the allowance for frequent changes in

---

[4] Dr. Boruff's letter says "12/2/14." However, Mr. Pickens testified that he finished his shift on December 2, 2014. The Court infers that Dr. Boruff intended to say December 3, 2014.

6

positions, with no position (e.g., standing, walking, sitting) maintained for more than two hours without the ability to change. (Ex. 7.) Mr. Powers testified that a UPS package driver is required to be able to lift up to seventy pounds without assistance. He also testified that someone with a thirty-pound lifting restriction would be unable to perform the duties of a package driver and that he was not aware of any light-duty work available at UPS.

The Court finds that Mr. Pickens is entitled to temporary total disability benefits from December 3, 2014, until March 23, 2015. Mr. Pickens may be entitled to additional temporary total or temporary partial disability benefits from March 24, 2015, until November 10, 2015, when he was placed at maximum medical improvement. However, Mr. Pickens did not provide a medical opinion to establish to establish his inability to work, or ability to work with restrictions, from March 24, 2015, to November 10, 2015. Therefore, the Court is unable to address temporary benefits for that period at this time.

Based on the foregoing, Mr. Pickens has come forward with sufficient evidence from which this Court concludes that he is likely to prevail at a hearing on the merits. His requests for medical and temporary disability benefits are granted at this time.

**IT IS, THEREFORE, ORDERED** as follows:

1. Medical care for Mr. Pickens' injuries shall be paid and UPS or its workers' compensation carrier shall provide Mr. Pickens with medical treatment for these injuries as required by Tennessee Code Annotated section 50-6-204 (2014), to be initiated by UPS or its workers' compensation carrier either authorizing Dr. Koenig to treat as the authorized treating physician or providing Mr. Pickens with a panel of orthopedic physicians. In addition, UPS shall be responsible for payment of medical expenses to Dr. Boruff's office for treatment related to Mr. Pickens' work-related back injury. Medical bills shall be furnished to United Parcel Service or its workers' compensation carrier by Mr. Pickens or the medical providers.

2. The amount of temporary disability benefit is $932.80 per week based on the stipulated maximum compensation rate.

3. Payment of past-due benefits in the amount $14,924.80 of shall be made for the period from December 3, 2014, to March 23, 2015.

4. This matter is set for an Initial (Scheduling) Hearing on February 16, 2016, at 9 a.m.

5. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2014). The Insurer or Self-Insured Employer must submit confirmation of

compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.

6. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

**ENTERED this the 22nd day of December, 2015.**

_____
**Judge Lisa A. Knott**
**Court of Workers' Compensation Claims**

Initial (Scheduling) Hearing:

An Initial (Scheduling) Hearing has been set with **Judge Lisa A. Knott, Court of Workers' Compensation Claims. You must call 865-594-0109 or toll-free at 855-383-0003 to participate in the Initial Hearing.**

**Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation.**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk _within seven business days_ of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment

8

must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

# APPENDIX

<u>Exhibits:</u>
- EXHIBIT 1: Affidavit of Michael Pickens;
- EXHIBIT 2: Week Wage Statement, Form C-41;
- EXHIBIT 3: First Report of Work Injury, for date of injury of December 2, 2014;
- EXHIBIT 4: Notice of Denial of Claim for Compensation, Form C-23;
- EXHIBIT 5: Medical Records of Internal West;
- EXHIBIT 6: Medical Records of Occupational Health Systems;
- EXHIBIT 7: Independent Medical Examination of Dr. Thomas Koenig

<u>Technical record:</u>[5]
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Employer's Memorandum in Opposition to Employee's Request for Expedited Hearing
5. Employer's Supplemental Memorandum in Opposition to Employee's Request for Expedited Hearing

---

[5] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 22nd day of December, 2015.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Chris Beavers, Esq., Employee's Counsel | | | X | chriswbeavers@yahoo.com |
| Mandy Hancock, Esq., Employee's Counsel | | | X | Mandy.Hancock@banksandjones.com |
| Tyler D. Smith, Esq. Employer's Counsel | | | X | Tyler.smith@leitnerfirm.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov